FORET, Judge.
In this action, Robert W. Knauf, appellee herein, sued appellant, Continental Bail Bonds, Inc. (Continental), to recover a $2,500 premium he paid for a bail bond. Knauf claims that he is entitled to a refund of his bond premium pursuant to La.C. Cr.P. art. 338D because he had not failed to appear nor had he violated any court order prior to the time Continental surrendered him and got off his bond.
The trial court entered judgment in favor of Knauf, awarding him a partial refund of the bond premium in the amount of $1,000. Continental appeals, contending that no refund was due to Knauf because Knauf breached the conditions of the bonding agreement. Additionally, Continental claims there was good cause for the surrender of Knauf pursuant to La.C.Cr.P. art. 338D. Knauf did not answer this appeal.
We reverse the judgment of the trial court awarding Knauf $1,000. Additionally, we fine the appellant, Continental, in the amount of $100 payable to the Fourteenth Judicial District Court for the Parish of Calcasieu, for failure to give Knauf written notice of his rights pursuant to La.C.Cr.P. art. 338E(1) and (2).
FACTS
The facts were stipulated at trial.
On February 27, 1987, Linda Clark, an employee of Continental Bail Bonds, Inc., bonded Robert W. Knauf out of the Calca-sieu Parish Jail. Knauf was being held on a charge of public intimidation, his bond being set at $25,000. Knauf filled out the application for the appearance bond and executed same. He paid Linda Clark the sum of $2,500 as a bail bond premium and was released.
On March 1, 1987, Knauf was arrested, without a warrant, and re-incarcerated on charges of possession of marijuana, possession of cocaine with intent to distribute, trespassing, and no driver’s license in possession. Continental, through its President, Dave Davis, surrendered Knauf after the subsequent arrest. No notification was given to Knauf regarding an entitlement to a refund of the bond premium nor was any refund given to him. Knauf had not violated any court orders ordering his detention and there were no forfeitures of his bond at the time of his surrender. Knauf demanded a refund of his bail bond premium from Continental.
Joint exhibits introduced at trial included:
(1) the application for an appearance bond executed by Knauf;
(2) the bond between the State of Louisiana, Parish of Calcasieu, and the parties herein;
(3) the certificate of surrender acknowledging that Knauf was incarcerated at the time of surrender, and;
(4) a letter dated March 12, 1987, from Knauf’s attorney requesting a refund of Knauf’s bond premium.
*907 ISSUE
Knauf contends that he is entitled to a refund of the bond premium which he paid to Continental after Continental surrendered his bond before he had either failed to appear or had violated any court order for his detention. Continental contends that it is entitled to retain Knauf s bond premium, both pursuant to the terms of the contract between the parties and pursuant to La.C.Cr.P. art. 338.
MERITS
La.C.Cr.P. art. 338 states, in pertinent part, as follows:
“Art. 338. Surrender of defendant
A. A surety may surrender the defendant or the defendant may surrender himself, to the officer charged with his detention, at any time prior to forfeiture or within the time allowed by law for setting aside a judgment of forfeiture of the bail bond. Upon surrender of the defendant, the officer shall detain the defendant in his custody as upon the original commitment and shall acknowledge the surrender by a certificate signed by him and delivered to the surety. Thereafter, the surety shall not be responsible for the defendant.
[[Image here]]
D. When a surety surrenders a defendant who has not failed to appear or who has not violated any order of the court ordering the defendant’s detention, the surety shall refund to the defendant the total amount paid by the defendant to the surety for the bail bond by delivering, within twenty-four hours after surrender of such defendant, the entire refund to the account maintained for the defendant by the officer charged with his detention. The court, on motion of the surety and after notice and opportunity for hearing is given to the defendant, shall order the return to the surety of his fee upon a showing that good cause existed for the surrender of the defendant.
E. (1) At the time of the surrender by a surety of each defendant, the surety shall give written notice to the defendant of his right to receive a refund of the amount paid by the defendant to the surety for the bail bond.
(2) If any surety fails to deliver to any defendant written notice of the right to receive a refund of the bail bond fee, he shall be fined one hundred dollars payable to the court which has ordered the defendant’s detention.
(3) If any surety fails to refund the amount paid for the bail bond to a defendant as required herein, he shall be fined one hundred dollars.
F.This Section shall not apply to a defendant surrendered pursuant to a court order, including a capias. Amended by Acts 1983, No. 370, § 1.”
Under the mandate of Art. 338D, when a surety surrenders a defendant who has neither failed to appear nor violated any order of the court ordering the defendant’s detention, the surety shall refund the bond premium paid by the defendant. This refund is to be accomplished by delivery of the refund, within twenty-four hours of the defendant’s surrender, to the officer in charge of the defendant’s detention. The surety may then move for a return of the bond premium after a showing that good cause existed for the surrender of the defendant.
The application for an appearance bond executed by Knauf included the following terms and conditions, in pertinent part:
“1. INDIANA LUMBERMENS MUTUAL INSURANCE COMPANY, as bail, shall have control and jurisdiction over the Defendant during the term for which the bond is executed and shall have the right to apprehend, arrest and surrender the Defendant to the proper officials at any time as provided by law.
2. In the event surrender of Defendant is made prior to the time set for Defendant’s appearances, and for reason other than as enumerated below in paragraph 3, then Defendant shall be entitled to a refund of the bond premium.
3. It is understood and agreed that the happening of any one of the following *908 events shall constitute a breach of Defendant’s obligations to INDIANA LUMBERMENS MUTUAL INSURANCE COMPANY hereunder, and INDIANA LUMBERMENS MUTUAL INSURANCE COMPANY shall have the right to forthwith apprehend, arrest, and surrender Defendant, and Defendant shall have no right to any refund of premium whatsoever. Said events which shall constitute a breach of Defendant’s obligations hereunder are:
(a) If Defendant shall depart the jurisdiction of the court without the written consent of the court and INDIANA LUMBERMENS MUTUAL INSURANCE COMPANY, or its Agent.
[[Image here]]
(c) If Defendant shall commit any act which shall constitute reasonable evidence of Defendant’s intention to cause a forfeiture of said bond.
(d) If Defendant is arrested and incarcerated for any offense other than a minor traffic violation.
[[Image here]]
Continental surrendered Knauf after he had been arrested and incarcerated on new charges of possession of marijuana, possession of cocaine with intent to distribute, trespassing, and no driver’s license in possession. Pursuant to the terms and conditions of the bond application set forth above, Continental retained the right to surrender Knauf, without refunding the bond premium, if Knauf was “arrested and incarcerated for any offense other than a minor traffic violation” and/or if Knauf committed “any act which [would] constitute reasonable evidence of Defendant’s intention to cause a forfeiture of said bond.”
The apparent conflict at issue is whether the statute requiring a refund of the bond premium within twenty-four hours is controlling or whether the contract between Continental and Knauf controls, wherein Knauf agreed that he was not entitled to a refund upon surrender if he was arrested and incarcerated for any offense other than a minor traffic violation.
The issue regarding potential conflicts between a surety contract and statutory requirements set forth in Art. 338 is res nova in Louisiana. Although much of the relationship between a surety and principal is governed by contract principles, several state legislatures have chosen to regulate the bondsman’s right to retain vis-a-vis the duty to refund a defendant’s bond premium under certain conditions.
Colorado’s statute similar to Louisiana, found at Section 16-4-108(l)(c) 18 C.R.S. (1978), states in pertinent part:
“If a compensated surety is exonerated by surrendering a defendant prior to the appearance date fixed in the bond, the court, after a hearing, may require the surety to refund part or all of the bond premium paid by the defendant if necessary to prevent unjust enrichment.”
Yording v. Walker, 683 P.2d 788, 790 (Colo.1984).
Texas has also legislated in this area in Art. 2372p-3, § 13(a), Vernon’s Ann.C.S., as follows:
“(b) If the reason for surrender is deemed without reasonable cause by the principal, any agent of the sheriff, or any attorney representing the state or any accused in the proceeding, that person may bring the matter to the attention of the court.
“(c) If -the court determines that the person who surrendered the principal did so without reasonable cause, the court in its discretion may require that all or a part of the fees paid as a condition for making the bail bond shall be returned to the principal. In making the determination the court shall determine what fees, whether denominated fees for the making of the bond or not, were in fact paid for the purpose of inducing the surety to make the bond.”
McConathy v. State, 545 S.W.2d 166, 167-168 (Tex.Crim.App.1977).
The McConathy court, at page 168, explains that the purpose of the statute “is to provide a remedy for the principal for a return of all or any part of the fees paid for making the bond if the surrender was without reasonable cause ...”.
*909 This delicate interplay between the surety-principal relationship and corresponding statutes is succinctly summarized in 8 C.J.S. Bail § 138 (1988) at page 161, as follows:
“Although the surety may have the legal right to obtain his discharge by surrendering the principal, he has no such right as between himself and the principal, and the surety’s surrender of the principal will not release him from his agreement to remain bail until the case is called for trial, or according to the terms of the bond. Accordingly, in the event of an unwarranted surrender the principal may recover the amount of the premium paid. If there is an agreement that the sureties will not exercise their lawful right to surrender the principal, there is implied, if not otherwise expressed, the duty of the principal so to conduct himself as not to cause reasonable apprehension on the part of the sureties as to whether he will answer the charge as required by law, and will not violate his duty to the sureties to be subject to their control. The determination as to whether the agreement was breached by such surrender depends on whether the contract authorized such surrender, or if not, whether the subsequent conduct of the principal was such as justified a surrender. Where the surrender is authorized or the surety has not breached his duty, premiums paid for the bail may not be recovered.”
See also, Jordan v. Knight, 250 Ala. 109, 35 So.2d 178 (1948).
In this case, Knauf’s arrest, on considerably more serious charges than the original public intimidation charge for which Continental put up the bond, increased Continental’s risk that Knauf would fail to appear in court on the original charge. We find that, under these facts,[1] Continental had “good cause”, sufficient to satisfy Art. 338D, to surrender Knauf and terminate this risk. Additionally, Knauf, by his conduct, breached the surety contract with Continental and is not entitled to a refund of his bond premium.
Therefore, examining them together, we find no conflict between the statute and the contract at issue. Due to Continental’s failure to follow the statutory procedure set forth in Art. 338D, Knauf was forced to, in effect, move for a “show cause” hearing on the issue of good cause. Under the statute, Continental is subject to a statutory fine in the amount of $100 for failure to deliver to Knauf written notice of his potential right to receive a refund pursuant to La.C.Cr.P. art. 338E. Under both the statute and the contract, Continental is entitled to retain the bond premium paid by Knauf.
CONCLUSION
Based upon the foregoing, the judgment of the trial court is reversed and Continental is condemned to pay the Clerk of the Court for the Fourteenth Judicial District Court of the State of Louisiana, where the original charges against Knauf were filed, $100.00. Knauf is cast with costs of this proceeding.
REVERSED.

. Our holding is limited to the facts of this case, insofar as we do not determine that the terms and conditions set forth in the bond application, in and of themselves, constitute "good cause” under La.C.Cr.P. art. 338. Upon the surrender of a defendant, the proper procedure for determining the surety’s right to its fee is set forth by statute and the trial court must determine each case on its own facts.